# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

MIGUEL A. TORRES-BAEZ,

        Plaintiff,

v.

DEPUTY GIOVENCO-MONTANO, *et al.*,

        Defendant.

Action No. 2:20cv580

## UNITED STATES MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

This matter comes before the Court on the plaintiff's motion for attorneys' fees. ECF No. 96. On June 15, 2022, this matter was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Civil Rule 72. ECF No. 103.

For the reasons stated herein, the Court **RECOMMENDS** that the plaintiff's motion be **GRANTED IN PART** and **DENIED IN PART** and plaintiff be awarded $56,740.60 in attorneys' fees.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff, Miguel A. Torres-Baez, filed a complaint pursuant to 42 U.S.C. § 1983 against John Doe, Lieutenant Jason Giovenco-Montano,[1] Deputy Gabriel Ozzimo, and Deputy

---

[1] During the litigation, Lieutenant Giovenco-Montano died and was subsequently dismissed from the case. ECF Nos. 81–83.

Tyler Thomas for the injuries he sustained on February 9, 2017, while an inmate at Norfolk City Jail. ECF No. 1.[2] Mr. Torres-Baez sets forth two claims against the defendants: use of excessive force and breach of duty to protect. ECF No. 17, at 11–14. The complaint was filed in Alexandria on February 9, 2018, *see* ECF Nos. 1, 4, and was transferred to Norfolk on November 19, 2020, pursuant to 28 U.S.C. § 1404(b). ECF No. 80.

At the beginning of this action, Mr. Torres-Baez was not represented by counsel and was proceeding *in forma pauperis*. ECF No. 10. Mr. Torres-Baez filed a motion for appointment of counsel on June 4, 2018, ECF No. 22, that was denied without prejudice. ECF No. 26. Mr. Torres-Baez continued representing himself and successfully opposed the defendants' motion for summary judgment. ECF No. 37. Thereinafter, Emily Walsh Booth, Esq., an attorney at Morgan, Lewis & Bockius LLP, filed a notice of appearance on behalf of Mr. Torres-Baez on August 27, 2019. ECF No. 44. Additionally, two of Ms. Booth's colleagues, Bruno Reategui, Esq., and Pejman Moshfegh, Esq., were granted admission to appear *pro hac vice* on behalf of Mr. Torres-Baez on October 21, 2020. ECF Nos. 68–69.

On March 24, 2022, Mr. Torres-Baez accepted the defendants' offer of judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure, ECF No. 94, and the remaining defendants— Deputies Ozzimo and Thomas—were ordered to pay Mr. Torres-Baez a sum of $10,000.00. ECF No. 95. The offer of judgment states that "[t]his offer is not inclusive of reasonable costs and attorneys' fees accrued to date, which may be sought pursuant to statute and in accordance with the Federal Rules of Civil Procedure. Any such petition for fees and costs is subject to the Court's determination over any objections which may be filed by Defendants Gabriel Ozzimo and Tyler

---

[2] Mr. Torres-Baez later filed an amended complaint. ECF No. 17.

Thomas."[3]  ECF No. 94-1.

Subsequently, on April 8, 2022, Mr. Torres-Baez filed a timely motion and supporting memorandum for attorneys' fees and expenses, pursuant to 42 U.S.C. § 1988(b) and Federal Rule of Civil Procedure 54(d)(2).  ECF Nos. 96–97.  In Mr. Torres-Baez's initial memorandum, he sets out an estimate of attorneys' fees and expenses not exceeding $205,000.00 and states that he "will submit all evidentiary support to support his claims for attorney's fees at a date to be later set by the Court."  ECF No. 97, at 3.  The defendants opposed the motion and Mr. Torres-Baez filed a reply.  ECF Nos. 99, 100.  The motion was then referred for a report and recommendation.  ECF No. 103.  The Court directed Mr. Torres-Baez to "file a motion substantiating his reasonable expenses and attorneys' fees, including any supporting affidavits, consistent with the factors enumerated in *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243–44 (4th Cir. 2009)."  ECF No. 104.  On July 21, 2022, Mr. Torres-Baez filed a motion and supporting memorandum for attorneys' fees and expenses in the amount of $138,572.70.  ECF Nos. 107–08.  The defendants filed an opposition on August 4, 2022 to Mr. Torres-Baez's motion claiming that the Court "should

---

[3] The language of the offer of judgment is particularly important to determine whether the Prison Litigation Reform Act ("PLRA") applies and caps attorneys' fees.  *See* 42 U.S.C. § 1997e(d). Neither party cited the PLRA cap nor does the Court find it applies here.  The offer of judgment's language controls and the Court will construe the language against the defendants.  Therefore, because the defendants agreed to pay reasonable attorneys' fees in the offer of judgment and the defendants do not raise the PLRA cap, the Court will not apply it here.  *See Torres v. Walker*, 356 F.3d 238, 245–46 (2d Cir. 2004) (holding that the PLRA attorneys' fees cap did not apply where the plaintiff accepted the offer of judgment, which was subsequently memorialized in a "so-ordered" stipulation of settlement and order of dismissal, because "the language of the stipulation plainly and unambiguously provided for payment of . . . reasonable attorneys' fees"); *Brock v. Wright*, No. 00-CV-0085, 2005 WL 2459112, at *1 (W.D.N.Y. Oct. 4, 2005) (finding that "although a monetary judgment was entered, it was based upon a stipulation of dismissal which clearly contemplates that plaintiff's counsel 'will make a separate application to the Court for attorneys' fees,' and an offer of judgment which does not limit that application to the confines of the PLRA.  Accordingly, the Court finds that the negotiated terms of the parties' settlement agreement removes this case from the limitations of the PLRA").

3

award only reasonable attorney's fees in an amount not exceeding $15,775.00." ECF No. 109, at

12. Lastly, Mr. Torres-Baez filed a reply on August 10, 2022. ECF No. 110. Accordingly, this

matter is ready for decision.

## II.   STANDARD OF REVIEW

A prevailing party in an action enforcing 42 U.S.C. § 1983 may be awarded "a reasonable

attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Thus, a plaintiff must be deemed a

"prevailing party" prior to determining whether the attorneys' fees are reasonable. A prevailing

party for purposes of section 1988 is "a party in whose favor a judgment is rendered, regardless of

the amount of damages awarded." *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013) (quoting

*Grissom v. The Mills Corp.*, 549 F.3d 313, 318 (4th Cir. 2008)).

Neither party disputes that Mr. Torres-Baez is a prevailing party, *see* ECF No. 108, at 3;

ECF No. 109, at 3, because Mr. Torres-Baez obtained a $10,000 judgment against the defendants.

ECF No. 95.[4] Rather, the defendants argue that Mr. Torres-Baez's request for attorneys' fees is

unreasonable. ECF No. 109, at 3–12.

There is a three-step process in determining reasonable attorneys' fees. First, a court must

"determine a lodestar figure by multiplying the number of reasonable hours expended times a

reasonable rate." *Robinson*, 560 F.3d at 243 (citing *Grissom*, 549 F.3d at 320). To determine a

"reasonable" number of hours and rate, a court is guided by the following factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the
> questions raised; (3) the skill required to properly perform the legal
> services rendered; (4) the attorney's opportunity costs in pressing
> the instant litigation; (5) the customary fee for like work; (6) the
> attorney's expectations at the outset of the litigation; (7) the time
> limitations imposed by the client or circumstances; (8) the amount

---

[4] It should be noted that the defendants make clear that although Mr. Torres-Baez is a prevailing
party, that only makes him *eligible* to recover attorneys' fees rather than mandating recovery for
attorneys' fees. ECF No. 109, at 2.

in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* at 243–44 (quoting *Barber v. Kimbrell's Inc.,* 577 F.2d 216, 226 n.28 (4th Cir. 1978)). When calculating the lodestar amount a court must exclude hours that are "excessive, redundant, or otherwise unnecessary." *Project Vote/Voting for Am., Inc. v. Long,* 887 F. Supp. 2d 704, 709 (E.D. Va. 2012) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983)).

After calculating the lodestar figure, a court "should subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Robinson,* 560 F.3d at 244 (citing *Grissom,* 549 F.3d at 321). Finally, a court then awards "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.*

## III.  ANALYSIS

### A.  Lodestar analysis

Mr. Torres-Baez represents that he incurred $138,572.70 in attorneys' fees for 329.2 hours spent "conducting a factual investigation, preparing for and attending depositions, pursuing written discovery, and preparing for trial." ECF No. 108, at 4, 6. Although Mr. Torres-Baez had numerous attorneys from Morgan Lewis working on his case, he only seeks attorneys' fees for the three core attorneys—Ms. Booth, Mr. Reategui, and Mr. Moshfegh. *Id.* at 5–6. He requests the following hourly rates for each of his attorneys:  $372.00 for Ms. Booth, an associate attorney with approximately one year of experience at the time she entered her appearance in this case, $455.00 for Mr. Reategui, an associate attorney with four years of experience "practicing law and . . . litigating complex class action and multi-district litigation" when he entered an appearance in this case, and $455.00 for Mr. Moshfegh, an associate attorney with six years of experience "practicing

5

law and . . . litigating complex federal and state regulatory matters" when he entered an appearance in this case. *Id.* at 6; ECF No. 108-1, at 2.[5] Additionally, Mr. Torres-Baez is not seeking attorneys' fees for any litigation following the acceptance of the offer of judgment. ECF No. 108, at 5; *see* ECF No. 108-3.

In support of the fee request, Mr. Torres-Baez submitted exhibits with time entries and descriptions of the work performed by his attorneys, ECF No. 108-3, a declaration by Ms. Booth, ECF No. 108-1, the *Laffey* matrix, ECF No. 108-4, and the hours worked, experience, and rate of each attorney, ECF No. 108-2. The defendants object claiming that both the attorneys' rates and hours billed are unreasonable. ECF No. 109, at 4–10. The Court will first determine the lodestar amount by multiplying the reasonable hourly rate with the hours reasonably expended. *McAfee*, 738 F.3d at 88 (quoting *Robinson*, 560 F.3d at 243).

1.   **Reducing the requested hourly rates for Mr. Torres-Baez's attorneys is appropriate.**

The party seeking attorneys' fees "bears the burden of establishing the reasonableness of the hourly rates requested." *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987). Determination of the hourly rate is critical in deciding whether the attorneys' fees are reasonable. *See Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990). To establish a rate as reasonable the moving party "must produce specific evidence of the 'prevailing market rates in the relevant community' for the type of work for which he seeks an award." *Spell*, 824 F.2d at 1402 (quoting *Blum v. Stenson*, 465 U.S. 886, 895–96, 896 n.11 (1984)). Evidence that shows the prevailing market rate includes "affidavits of other local lawyers who are familiar both with the skills of the fee applicants

---

[5] Mr. Torres-Baez has only sought "2019 rates" for his attorneys. ECF No. 108, at 6. Therefore, the Court will use each attorneys' experience at the date they entered the case rather than the date the motion for attorneys' fees was filed. *See* ECF No. 108-1, ¶¶ 7–9 (listing each attorney's law school graduation year).

and more generally with the type of work in the relevant community." *McAfee*, 738 F.3d at 91 (quoting *Robinson*, 560 F.3d at 245).

Furthermore, to determine reasonable rates a court is required to consider the relevant factors outlined in *Robinson*. *Robinson*, 560 F.3d at 243–44 (citing *Barber*, 577 F.2d at 266 n.28). A court is not required to comment on every factor, only those that are relevant. *P5 Sols., Inc. v. Steinke*, No. 1:18cv1380, 2020 WL 3259793, at *2 (E.D. Va. June 15, 2020) (citing *In re A.H. Robins Co.*, 86 F.3d 364, 376 (4th Cir. 1996)). In this case, the Court finds factors two, three, five, nine, and twelve particularly relevant in determining what a reasonable hourly rate is for each of Mr. Torres-Baez's attorneys. Factors four, six, seven, and ten, the Court finds to be not relevant here. Factors one, the time and labor expended, and eleven, the nature and length of professional relationship between attorney and client, will be discussed in determining the second half of the lodestar calculation—the hours reasonably expended in Part A.2. Lastly, factor eight, the amount in controversy and the results obtained, will be discussed in Part C. *See Gregory v. Belfor USA Grp., Inc.*, No. 2:12cv11, 2014 WL 468923, at *8 (E.D. Va. Feb. 4, 2014) ("To avoid giving double the weight to counsel's success, a key issue that the Fourth Circuit has directed courts to consider after establishing the lodestar, the Court will also give little weight to the eighth factor, the amount in controversy and results obtained.").

First, the Court analyzes the second factor, the novelty and difficulty of the questions raised, and the third factor, the skill required to properly perform the legal services rendered. Mr. Torres-Baez does not argue either of these factors. The issues raised in this lawsuit relate to claims regarding the defendants' violation of Mr. Torres-Baez's Eighth Amendment rights by using excessive force against him. ECF No. 108, at 1; ECF No. 17, ¶ 46–48. These types of cases under section 1983 are common. There also appears to be no requirement for any specialized skill to

litigate such a case. *See* ECF No. 109, at 5 (noting that the plaintiff did not discuss "any important skills required to perform the work or tie any special experience or the reputations" of the plaintiff's attorneys to this case). The Court finds that factors two and three weigh in favor of lowering Mr. Torres-Baez's attorneys' hourly rates.

Also relevant is factor nine, the experience, reputation and ability of an attorney. All three attorneys are associates with varying years of experience. ECF No. 108, at 6. Ms. Booth had one year of experience practicing law, Mr. Reategui had four years of experience doing complex litigation, and Mr. Moshfegh had six years of experience practicing complex federal and state regulatory matters at the time they entered the case. *Id.* at 6; ECF No. 108-1, at 2. However, none of the attorneys' skills were particular to civil rights cases. The Court finds that factor nine weighs in favor of lowering the attorneys' hourly rates but also finds that allowing for a range based upon the attorneys' experience is appropriate.

Next, the Court considers factor five, the customary fee for like work. In analyzing this factor, "the Court consider[s] the affidavits submitted by both parties regarding reasonable attorney's fees for the specific legal work in this case and the customary hourly rates typically charged to clients for similar work in similar cases." *Denton v. PennyMac Loan Servs., LLC*, 252 F. Supp. 3d 504, 519 (E.D. Va. 2017) (citing *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994)). Furthermore, "[i]n addition to the attorney's own affidavit[], the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." *Lismont v. Alexander Binzel Corp.*, 47 F. Supp. 3d 443, 457 (E.D. Va. 2014) (quoting *Robinson*, 560 F.3d at 244)). Normally, the prevailing market rate used is the district in which a court sits. *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983). But, if a suit was properly filed in one district and

8

transferred for the "convenience of parties and witnesses, in the interest of justice," 28 U.S.C. § 1404(a), then counsel is entitled to the fees at the rate in the home district. *Id.* (citing *Va. Acad. of Clinical Psychs. v. Blue Shield of Va.*, 543 F. Supp. 126 (E.D. Va. 1982)).

As noted above, Mr. Torres-Baez has only presented one affidavit from attorney Booth. Ms. Booth's declaration sets forth details about her and her fellow attorneys' credentials, familiarity with Morgan Lewis' billing practices, efforts undertaken in this litigation, and attestation to the truthfulness of the attached time entries. ECF No. 108-1. Ms. Booth opines that the rates requested are consistent with the *Laffey* matrix, which is used to determine an attorney's reasonable hourly rate in the District of Columbia. *Id.* ¶ 13–16. Additionally, the fees under the *Laffey* matrix are "significantly less than the market rates [his attorneys] normally charge." ECF No. 110, at 6. However, this case was never litigated in Washington, D.C. Mr. Torres-Baez has failed to show that counsel of similar skill and quality were unavailable in Virginia. *Yamaha Motor Corp., U.S.A. v. Jim's Motorcycle, Inc.*, 381 F. Supp. 2d 499, 504 (E.D. Va. 2005) (explaining that the fee applicant has "the burden to show that a particular case for which out-of-locality rates are sought was one of such complexity and specialized nature that no attorney with the required skills was available locally and that the fee applicant was reasonable in choosing an attorney from out of the forum"). Rather, Mr. Torres-Baez claims that "the D.C. Circuit has approved the use of the matrix," ECF No. 110, at 6, and that the experience of his attorneys justify using the *Laffey* matrix, ECF No. 108, at 6.

Mr. Torres-Baez cites to two cases to support his claim that the *Laffey* matrix should be used to support his attorneys' rates. First, Mr. Torres-Baez cites to *Hanzlik v. Birach*, No. 1:09cv221, 2010 WL 1695610, at *3 (E.D. Va. Apr. 28, 2010), to support his contention that "[a]bsent 'specific evidence before this Court of the customary fee for like work,' the Laffey

9

Matrix may guide the reasonability of fees in a case." ECF No. 108, at 4. However, in *Hanzlik*

the court specifically allowed the attorney to use the *Laffey* matrix because "the retainer agreement

. . . specified that [the attorney] be compensated at the Laffey rate" and the defendants in the case

did not object to the hourly rate charged by the plaintiff's attorney. *Hanzlik*, 2010 WL 1695610,

at *4. Second, Mr. Torres-Baez cites to *Jarno v. Dep't of Homeland Sec.*, 365 F. Supp. 2d 733

(E.D. Va. 2005), that, without much discussion about the appropriate prevailing market rate, holds

that requested hourly rate of $280.00 derived from the *Laffey* matrix was reasonable. ECF No.

108, at 5; *Jarno*, 365 F. Supp. 2d at 741. The case is distinguishable from Mr. Torres-Baez's

because in *Jarno*, "[n]o other attorney or law firm was able to take on th[e] matter given the short

time frame in which it needed to be litigated," justifying using Washington, D.C. rates. *Jarno*, 365

F. Supp. 2d at 741. Moreover, this Court has held that the *Laffey* matrix is "neither sufficient to

show the reasonableness of an hourly rate nor are they controlling in this Court." *Taylor v.*

*Republic Servs., Inc.*, No. 1:12cv00523, 2014 WL 325169, at *5 (E.D. Va. Jan. 29, 2014) (citing

*Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 591 F.3d 219, 229 (4th Cir. 2009)). The

Court finds that the customary fee sought by Mr. Torres-Baez in reliance on the *Laffey* matrix is

not persuasive. *See McNeil v. Faneuil, Inc.*, No. 4:15cv81, 2017 WL 9771834, at *6 (E.D. Va.

Nov. 8, 2017), *report and recommendation adopted*, No. 4:15cv81, 2018 WL 1411017 (E.D. Va.

Mar. 21, 2018) (rejecting the use of the *Laffey* matrix).

The defendants oppose the use of the *Laffey* matrix and propose using Norfolk as the

prevailing market rate. ECF No. 109, at 5–6. They argue that the "[p]laintiff did not set forth any

customary fees for like work . . . with respect to the location where the action sat, Norfolk Virginia,

as required." *Id.*, at 5. Although it is true that Mr. Torres-Baez only sets forth customary fees for

Washington, D.C., the defendants' argument fails to recognize that this case was originally filed

10

in Alexandria on February 9, 2017. As outlined in *Polk*, because this case was transferred to Norfolk from Alexandria under 28 U.S.C. § 1404(a) on November 19, 2020, after Mr. Torres-Baez's attorneys had already entered appearances, Mr. Torres-Baez's attorneys should receive the prevailing rate in Alexandria. *Polk*, 722 F.2d at 25. Moreover, even the defendants' own expert, John J. Rigby, relies upon customary hourly rates in Alexandria to support his conclusion that a lower hourly rate should be awarded. ECF No. 109-1, ¶¶ 37–38 (citing *Wingate v. Fulford*, No. 1:18cv00937 (E.D. Va. filed July 30, 2018)). Therefore, the Court will use Alexandria as the prevailing market rate.

Mr. Rigby opines that a rate "no more than $250 would be a reasonable rate based on other recent plaintiffs['] § 1983 litigation rates charged by associates." ECF No. 109, at 7 (citing ECF No. 109-1, ¶¶ 37–39). Mr. Rigby is a member of the Virginia, Maryland, and District of Columbia bars and has "practiced regularly in this Court for over 25 years." ECF No. 109-1, ¶¶ 2, 6. He has consulted with other attorneys regarding "attorney's fee petitions and recovery of reasonable attorney's fees." *Id.* ¶ 7. Mr. Rigby explains that the hourly rates sought by Mr. Torres-Baez are "highly questionable" because the only support is the unofficial *Laffey* matrix[6] and an affidavit from counsel. *Id.* ¶ 18–33. He supports his $250.00 hourly rate with a case currently pending in Alexandria, *Wingate v. Fulford*, No. 1:18cv00937 (E.D. Va. filed July 30, 2018), in which he submitted an expert declaration. ECF No. 109-1, ¶ 37. In *Wingate*, the plaintiff's attorneys, who have "significant experience and expertise in section 1983 litigation," are seeking $250.00 an hour, and the request for fees is still pending. *Id.* ¶¶ 37–38. Therefore, Mr. Rigby concludes that "no more than $250 an hour is appropriate in this case" because Mr. Torres-Baez's attorneys "claimed

---

[6] The defendants argue that the *Laffey* matrix attached by Mr. Torres-Baez is an "unofficial version." ECF No. 109, at 5. Whether the matrix is "unofficial" or "official" is irrelevant because the Court does not find the use of Washington, D.C. hourly rates appropriate.

no expertise or experience in section 1983 litigation." *Id.* ¶¶ 38–39. Although Mr. Rigby's opinion as an expert and evidence of a reasonable rate in Alexandria is worthy of consideration, his opinion appears to rest almost entirely upon an *undecided* request for attorney's fees. *Id.* ¶¶ 37–39. Therefore, the Court finds that Mr. Rigby's opinion to be only minimally compelling on the reasonable rate question.

Related to factor five, the Court considers factor twelve, attorneys' fees awards in similar cases. As stated previously, Mr. Torres-Baez is seeking a range of hourly rates from $372.00–$455.00 based on the *Laffey* matrix. However, Mr. Torres-Baez has provided no evidence of attorneys' fee awards in similar cases. Although defendants point to several cases where this Court found a rate of $250.00 to be reasonable, ECF No. 109, at 6–7, all three cases involve the market rate in Norfolk, not Alexandria. *See Lilienthal v. City of Suffolk*, 322 F. Supp. 2d 667, 672 (E.D. Va. 2004); *Crump v. U.S. Dep't of Navy by & through Mabus*, 245 F. Supp. 3d 692, 703 (E.D. Va. 2017); *LaFleur v. Dollar Tree Stores, Inc.*, 189 F. Supp. 3d 588, 596 (E.D. Va. 2016).

The Court, therefore, turns to the *Vienna Metro* matrix to aid in its calculation of reasonable attorneys' fee in the prevailing market, Alexandria. The Alexandria division of the Court has employed the *Vienna Metro* matrix in evaluating an attorney's reasonable hourly rate. *Cho v. Joong Ang Daily News Wash., Inc.*, No. 1:18cv1062, 2020 WL 1056294, at *4–5 (E.D. Va. Mar. 4, 2020) (finding that an hourly rate of $350.00 an hour for an attorney with fifteen years of experience in a Fair Labor Standards Act case was reasonable and well below the *Vienna Metro* matrix); *Gomez v. Seoul Gool Dae Gee Inc.*, 434 F. Supp. 3d 381, 386 (E.D. Va. 2020) (finding a rate of $495.00 for an attorney with sixteen years of experience in an action brought under the Fair Labor Standards Act was reasonable, in part, because it was "below the rates approved in *Vienna Metro*"). The matrix provides a range of hourly rates depending upon the attorney's experience:

**Range of Hourly Rates in Northern Virginia**

| Years of Experience | 1-3 | 4-7 | 8-10 | 11-19 | 20+ |
|---|---|---|---|---|---|
| **Hourly Rate** | $250–435 | $350–600 | $465–640 | $520–770 | $505–820 |

*Entegee, Inc. v. Metters Indus., Inc.*, No. 1:17cv499, 2018 WL 3472819, at *2 (E.D. Va. July 19, 2018) (citing *Vienna Metro, LLC v. Pulte Home Corp.*, 786 F. Supp. 2d 1090 (E.D. Va. 2011)). Although the *Vienna Metro* matrix is generally used in commercial litigation cases, both parties heavily cited to cases involving commercial litigation and the Court also finds the matrix useful, but not determinative, here. Additionally, the matrix includes rates that were held to be reasonable in Alexandria. *See Taylor v. Republic Serv., Inc.*, No. 1:12cv00523, 2014 WL 325169, at *4–5 (E.D. Va. Jan. 29, 2014) (finding a rate of $325.00 for an attorney with three years of experience in an employment discrimination case was reasonable); *Coward v. Robinson*, No. 1:10cv147, 2017 WL 5195868, at *3 (E.D. Va. Nov. 9, 2017) (discussing that, although the PLRA cap applied, the rates were reasonable, in part, because they were towards "the low end of the guidelines adopted in *Vienna Metro* . . . which have been used in a variety of decisions in this district").

The Court also looks to more recent, non-complex cases, for evidence of appropriate fees in Alexandria. *See Hair Club for Men, LLC v. Ehson*, No. 1:16cv236, 2017 WL 1250998, at *8 (E.D. Va. Apr. 3, 2017) (rejecting plaintiff's hourly rates that were "predominantly at the high end of the *Vienna Metro* Matrix" because the case did not involve complex civil litigation and thus the Court looked to similar non-complex cases to determine a reasonable rate). In *Doe v. Rector*, No. 1:15cv209, 2016 WL 3480947 (E.D. Va. June 21, 2016), the Court held that a rate that ranged from $245.00 an hour for associates to $445.00 an hour for partners was reasonable in a case proceeding under section 1983 for a violation of the plaintiff's Fourteenth Amendment due process

and free speech rights. *Doe*, 2016 WL 3480947, at *2–3. The Court also noted that the defendants admitted that the rates were reasonable and that they were "lower than the hourly rates that have been found 'reasonable' for attorneys of comparable experience in civil rights actions in Northern Virginia." *Id.* at *3. Although not a section 1983 case, in *Route Triple Seven Ltd. P'ship v. Total Hockey, Inc.*, 127 F. Supp. 3d 607 (E.D. Va. 2015), the Court held that a rate lower than the *Vienna Metro* matrix was justified because the case was not a complex civil case but rather a "garden-variety commercial dispute." *Route Triple Seven Ltd. P'ship*, 127 F. Supp. 3d at 620. The Court concluded that a rate between $200.00 and $250.00 an hour was reasonable for an associate with two to four years of experience and a rate of $400.00 and $420.00 an hour was reasonable for partners with sixteen plus years of experience. *Id.* at 620–21.

Because this case did not present any novel issues, was originally litigated in Alexandria, and Mr. Torres-Baez's attorneys had only generalized litigation experience, the Court finds that a reduction in plaintiff's asked-for rate is appropriate. In reducing the rate, the Court also considers that the *Vienna Metro* matrix is generally used in complex commercial litigation instead of section 1983 cases. Therefore, the Court recommends awarding the following rates to each attorney: $250.00 an hour for Ms. Booth; $400.00 for Mr. Moshfegh; and $350.00 for Mr. Reategui.

**2.    Some of the total hours requested were not reasonably expended on this case.**

Having determined the reasonable hourly rates, the Court must now determine the hours that were "reasonably expended." *Hensley*, 461 U.S. at 434. In evaluating the hours reasonably expended, the Court considers *Robinson* factors one, the time and labor expended, and eleven, the nature and length of the professional relationship between attorney and client. *Robinson*, 560 F.3d at 243–44. A party seeking the award must "'submit evidence supporting the hours worked' . . . and exercise 'billing judgment' with respect to hours worked." *Hyatt v. Barnhart*, 315 F.3d 239,

14

253 (4th Cir. 2002) (quoting *Hensley*, 461 U.S. at 433–34).  A court may reduce the fee award in

two ways: "(i) by identifying and disallowing specific hours that are not adequately documented,

or (ii) by reducing the overall fee award by a fixed percentage or an amount based on the trial

court's familiarity with the case, its complexity and the counsel involved." *SunTrust Mortg., Inc.,*

*v. AIG United Guar. Corp.*, 933 F. Supp. 2d 762, 777 (E.D. Va. 2013) (quoting *Guidry v. Clare*,

442 F. Supp. 2d 282, 294 (E.D. Va. 2006)).

In this case, Mr. Torres-Baez submitted detailed billing records for each of his attorneys.

ECF No. 108-3.  These records include the date the work was done, hours worked, and a narrative

explaining each entry.  Cumulatively the three attorneys worked 329.2 hours with each attorney

logging the following number of hours:  Ms. Booth 135.1 hours; Mr. Reategui 144.9 hours; and

Mr. Moshfegh 49.2 hours.  ECF No. 108, at 6.

The defendants put forth several objections to the hours claimed by Mr. Torres-Baez's

attorneys.  The defendants argue that the "the Court should exclude time entries that are

inadequately described, block bills, duplicative efforts made by counsel in different states, and

internal communications."  ECF No. 109, at 9.  The defendants proceed to go through the time

entries submitted by Mr. Torres-Baez line-by-line and make a total of 84 objections.  ECF No.

109-2.  The Court groups these objections into categories and discusses each in turn.

      a.    **A reduction in total requested hours is appropriate because some time
entries contain block billing.**

Many of the defendants' objections have to do with block billing.  Block billing, as defined

by Mr. Rigby, is "where more than one task was listed in a single time entry."  ECF No. 109-1,

¶ 41.  This "makes it difficult, if not impossible, to analyze whether the time spend [sic] on

particular tasks is reasonable."  *Id.*  Thus, the defendants argue, the Court should deny all, or at

least some, of the time that was block billed by Mr. Torres-Baez's attorneys.  ECF No. 109, at 3,

15

9; ECF No. 109-1, ¶ 41; ECF No. 109-2.

Block billing is not prohibited by the courts. *Project Vote*, 887 F. Supp. 2d at 716. The concern with block billing is that it can inhibit a court from accurately assessing the reasonableness of a fee request due to the lack of specification for time spent on each individual task. *Id.*; *Guidry*, 442 F. Supp. 2d at 294 ("[F]ee claimants must submit documentation that reflects 'reliable contemporaneous recordation of time spent on legal tasks that are described with reasonable particularity,' sufficient to permit the court to weigh the hours claimed and exclude hours that were not 'reasonably expended.'" (quoting *EEOC v. Nutri/System Inc.*, 685 F. Supp. 568, 573 (E.D. Va. 1988))).

The defendants have identified over 40 entries that they consider, at least in part, as block billing. ECF No. 109-2. Mr. Torres-Baez points out that some of the entries cannot be so characterized, such as time entry number seven with the narrative "[p]repare objections and responses to Defendants' Request for Production." ECF Nos. 110, at 3, 109-2. The Court agrees. Many of the time entries the defendants identify as block billing use phrases like "finalize and file" or "research and draft" or "evaluate and prepare," which do not render them incapable of being reviewed for reasonableness. Many of these tasks are done simultaneously, such as research and drafting, or are such short time entries that the Court need not be concerned about dividing up the time reasonably between tasks. Other time entries only lump together two very similar tasks, such as "[r]evise plaintiffs' responses to Defendants' request for interrogatories and request for production" and "[p]repare deposition outlines and exhibits for deposition of Defendants Thomas and Ozzimo." ECF No. 109-2, at 7; ECF No. 108-3, at 3. *Cf. Wyatt v. Owens*, No. 7:14-CV-492, 2018 WL 10613184, at *11 (W.D. Va. Jan 23, 2018) (noting that block billing that "lumped tasks into one billing entry of up to 8 or more hours" or had entries with "multiple, unrelated tasks"

16

justified reducing hours). Therefore, the Court finds that these time entries are fully recoverable.

However, there are some time entries that suffer from insufficient documentation due to block billing. Several of the time entries lump together multiple tasks for a large period of time. For example, Ms. Booth has a time entry for 2.3 hours that reads "Communicate with client regarding case status updates; Communicate with opposing counsel regarding joint discovery plan; Edit defendants' proposed protective order." ECF No. 108-3, at 4. She has another time entry for 6 hours that states "Research verdicts in excessive force cases in preparation for settlement conference; Prepare opening remarks for settlement conference; Communicate with internal defense team regarding preparations and strategy for settlement conference." *Id.* at 5. As stated in *Project Vote*, "[t]he court's role is not to labor to dissect every individual entry to hypothesize if the different tasks in the same entry could reasonably result in the requested time." *Project Vote*, 887 F. Supp. 2d at 717. Thus, because some of the documentation here is defective due to block billing, the Court finds that a ten percent (10%) reduction in the claimed hours is appropriate.[7] *See Denton*, 252 F. Supp. 3d. at 526 (reducing the plaintiff's hours by ten percent due to block billing entries); *Wolfe v. Green*, No. CIV.A. 2:08-01023, 2010 WL 3809857, at *8 (S.D.W. Va. Sept. 24, 2010) (finding that a "ten-percent reduction of the total attorneys' fee award is warranted by counsels' practice from time to time of block-billing").

**b. A reduction for internal communications is not appropriate.**

The defendants also contest time entries reflecting internal communications. ECF No. 109-2. The defendants identify over 30 time entries that have something to do with communication

---

[7] This reduction takes into account all time entries that the Court found to be inappropriate block billing. This includes Ms. Booth's two block billing entries that contained the administrative task of applying for admission to the Eastern District of Virginia. ECF No. 108-3, at 3. Therefore, the Court declines to further reduce those time entries.

17

between the "team" at Morgan Lewis handling Mr. Torres-Baez's case. *See* ECF No. 109-2. However, most of these time entries are less than one hour and the ones that are substantially longer the defendants also object to for some other reason, like block billing or duplicate time. ECF Nos. 108-3, 109-2. Thus, the total time the attorneys billed specifically for internal communication was less than fifteen hours.[8] ECF Nos. 108-3, 109-2. This amount of time is not unreasonable for three associate attorneys to spend on internal communication from 2020 to 2022. Internal meetings are an important part in litigating a case and such communication prevents duplicative work. *Kabore v. Anchor Staffing, Inc.*, No. L-10-3204, 2012 WL 5077636, at *6 (D. Md. Oct. 17, 2012); *see also Wyatt*, 2018 WL 10613184, at *9 (explaining "that time spent in intra-office attorney conferences is generally compensable"). Therefore, the Court finds that the hours spent by Mr. Torres-Baez's attorneys communicating internally are reasonable.

### c.   A reduction in the total requested hours is appropriate due to duplicative entries.

Next, the defendants object to 20 allegedly duplicative time entries. Mr. Torres-Baez claims that it is hypocritical for the defendants to "complain about the number of attorneys," while the defendants have had five different attorneys. ECF No. 110, at 4. Mr. Torres-Baez's argument misses the mark. The defendants' objection is not necessarily the fact that multiple attorneys worked upon the same case. Rather, the issue is when those attorneys performed unnecessary duplicative work. The defendants take issue with two of Mr. Torres-Baez attorneys doing the following tasks: familiarizing themselves with the case (4.5 hours), preparing and participating in the depositions of the parties (24.1 hours), attending pre-trial conferences (.6 hours); researching

---

[8] The Court arrives at this number by counting the hours the defendants objected to for internal communications only. There were many internal communications which were also inappropriate block billing entries, but the Court has already reduced fees for block billing and declines to do so again.

jury verdicts (2.1 hours)[9]; preparing responses to defendants' discovery requests (11.6); and preparing pre-trial disclosures (26 hours).  ECF No. 109-2.

In reviewing the hours expended, "the court must focus on the reasonableness of the division of responsibility between counsel." *Wyatt*, 2018 WL 10613184, at *9.  Having reviewed the division of labor between Mr. Torres-Baez's attorneys, the Court finds that it was unreasonable to have two associate attorneys involved in attending conferences and preparing for and participating in depositions. *See id.* at *10 ("It is . . . unreasonable for more than one attorney to attend depositions, especially when both attorneys are associates.").  Therefore, the Court will reduce those time entries by fifty percent (50%) as shown below:

| Task | Hours Claimed | Hours reduced by 50% |
|---|---|---|
| Attending conferences | .6 hours | .6 x .5 = .3 hours |
| Preparing for and participating in depositions | 24.1 hours | 24.1 x .5 = 12.05 hours |
| | | Total hours reduced by = 12.35 |

Because the duplication occurred in Mr. Reategui's and Mr. Moshfegh's time entries, the Court will reduce each attorney's time entries by 6.18 hours.

However, the Court does not find the following time entries to be duplicative: preparing pretrial disclosures, reviewing the case, and preparing responses to discovery requests.  In preparing pretrial disclosures and responding to discovery, the attorneys are not billing for performing the same task on the same day.  Instead, the attorneys appear to be working together to balance the workload.  For example, on October 27, 2020, Mr. Reategui prepares responses to interrogatories and then on October 28, 2020, Mr. Moshfegh continues to prepare responses to

---

[9] The Court declines to reduce the research hours performed by Ms. Booth and Mr. Reategui at this time because the Court discusses excessive research in Part d.

interrogatories. ECF No. 108-3, at 2–3. Thus, the attorneys' efforts are not duplicative. Additionally, because having multiple attorneys working on a case is not inherently unreasonable, each attorney may be compensated for their reasonable hours reviewing the case. *See Randle v. H&P Capital, Inc.*, No. 3:09cv608, 2010 WL 2944907, at *6 (E.D. Va. July 21, 2010) ("There is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." (quoting *Norman v. Hous. Auth.*, 836 F.2d 1292, 1302 (11th Cir. 1988))). Therefore, the Court does not find the hours reviewing the case to be duplicative.

> d.    **A reduction in the total requested hours is appropriate because some time entries were vague, and the attorneys billed for excessive time spent on research and pretrial disclosures.**

The defendants also object to the amount of time Mr. Torres-Baez's attorneys spent on certain tasks, such as researching, and also claim that some of those time entries are vague. The defendants point out 15 time entries that suffer, in part, from being either vague, excessive, or both. ECF No. 109-2.

The issue with vague entries is the lack of sufficient facts to identify the nature of the work performed. *Crump*, 245 F. Supp. 3d at 709. Although the time entries may be "sufficient on a client bill where the client is familiar with the progress of the work," that does not mean it is sufficient for an attorneys' fee request. *Id.* at 710. The defendants point to five time entries as vague. First, Ms. Booth's time entry dated August 28, 2019 for 3 hours that states "[a]nalyze standing orders; strategize next steps with regard to same." ECF No. 108-3, at 3; ECF No. 109-2, at 9. Second, Mr. Moshfegh's time entry dated August 12, 2020 for 2.2 hours that states "[e]valuate amended complaint and background material related to Torres-Baez matter." ECF No. 108-3, at 2; ECF No. 109-2, at 1. Third, Mr. Reategui's time entry dated August 13, 2020 for 2.3

hours that states "[r]eview amended complaint and selected material from case file." ECF No. 108-3, at 2; ECF No. 109-2, at 4. Fourth, Mr. Reategui's time entry dated October 19, 2020 for 2.5 hours that states "[r]eview pleadings and documents predicted in this action to prepare for upcoming depositions." ECF No. 108-3, at 3; ECF No. 109-2, at 6. Lastly, Ms. Booth's time entry dated March 9, 2022 for 5.6 hours that states "[r]esearch and analyze effect of an offer of judgment from Defendants on potential trial outcomes." ECF Nos. 108-3, at 6, 109-2, at 18.

The Court agrees that the first four time entries fail to specify what documents were being reviewed and are thus too vague to be compensated. *See Crump*, 245 F. Supp. 3d at 710 (explaining that billing time for "review [of] Navy's document production" was vague because it failed to indicate what documents were reviewed). The Court disagrees that the fifth entry by Ms. Booth is vague. Ms. Booth's entry identifies what she is researching, the effect of an offer of judgment on trial outcomes, and thus is not vague. Therefore, Ms. Booth's billable hours will be reduced by 3 hours, Mr. Reategui's billable hours will be reduced by 4.8 hours, and Mr. Moshfegh's will be reduced by 2.2 hours.

Next, the defendants argue that a few time entries were unreasonable because the attorneys spent too many hours on "basic research" or on preparing pretrial disclosures. ECF No. 109-2. Together Ms. Booth and Mr. Reategui spent roughly 15 hours researching damages and jury verdicts in excessive force cases. ECF No. 108-3, at 4–5. This is neither a novel or complex issue and the time entries do not demonstrate why this many hours were necessary. Therefore, researching this singular issue for almost two entire days is excessive.

Additionally, Mr. Reategui spent 25 hours preparing pretrial disclosures from November 16, 2020 to November 18, 2020. *Id.* at 3. Rule 26(a)(3) of the Rules of Civil Procedure outlines what information a party must provide for pretrial disclosures. Fed. R. Civ. P. 26(a)(3). The three

requirements are as follows:

> (i) the name and, if not previously provided, the address and telephone number of each witness—separately identifying those the party expects to present and those it may call if the need arises;

> (ii) the designation of those witnesses whose testimony the party expects to present by deposition and, if not taken stenographically, a transcript of the pertinent parts of the deposition; and

> (iii) an identification of each document or other exhibit, including summaries of other evidence—separately identifying those items the party expects to offer and those it may offer if the need arises.

*Id.* Mr. Torres-Baez's attorneys filed the pretrial disclosure on November 18, 2020. ECF No. 77. In this document, there are roughly 13 pages outlining all the required information under Rule 26(a)(3). *Id.* Notably, the trial exhibits list is long and detailed and likely took some time to complete. However, Mr. Reategui's time entries lack specificity that justifies spending 25 hours preparing the document. His time entries only state that he was "prepar[ing] pre-trial disclosures" without any further information about specifically what and how he was preparing. *See* ECF No. 108-3, at 3. Therefore, looking at the requirements of Rule 26(a)(3) and the pretrial disclosures submitted by Mr. Torres-Baez's attorneys, the Court finds that billing 25 hours for pretrial disclosures was excessive.

Therefore, finding that both the time spent on basic research and preparing pretrial disclosures were unreasonable, the Court will take five hours off each Ms. Booth and Mr. Reategui's time entries for the excessive research and an additional five hours off Mr. Reategui's time for excessive time spent on pretrial disclosures.

### e. **Reasonable hours summary**

The Court makes the following adjustments to the requested hours in order to eliminate hours that Mr. Torres-Baez failed to demonstrate were reasonably expended to this case:

1. Ten percent (10%) reduction in total requested hours for block billing;

2. 6.18 hour reduction in both Mr. Reategui's and Mr. Moshfegh's time for duplication of time entries;

3. 3 hour reduction in Ms. Booth's time, 4.8 hour reduction in Mr. Reategui's time, and 2.2 hour reduction in Mr. Moshfegh's time for vague time entries;

4. 5 hour reduction in both Mr. Reategui's and Ms. Booth's time for excessive research; and

5. 5 hour reduction in Mr. Reategui's time for excessive time spent on pretrial disclosures.

After the reductions, the total number of hours for each attorney is as follows:

| Name | Hours requested | Block billing reduction | Duplication of time | Vague entries | Excessive research | Excessive pretrial disclosures | Total Hours |
|------|-----------------|-------------------------|---------------------|---------------|--------------------|--------------------------------|-------------|
| Emily Booth | 135.10 | 135.10 x .90 = 121.59 | n/a | 121.59 – 3 = 118.59 | 118.59 – 5 = 113.59 | n/a | 113.59 |
| Bruno Reategui | 144.90 | 144.90 x .90 = 130.41 | 130.41 – 6.18 = 124.23 | 124.23 – 4.8 = 119.43 | 119.43 – 5 = 114.43 | 114.43 – 5 = 109.43 | 109.43 |
| Pejman Moshfegh | 49.20 | 49.20 x .90 = 44.28 | 44.28 – 6.18 = 38.10 | 38.10 – 2.2 = 35.90 | n/a | n/a | 35.90 |
| Total hours | | | | | | | 258.92 |

### 3.     Lodestar summary

Based upon the reasonable rates and reasonable hours analysis above, the following table reflects the Court's lodestar calculation, "which is the starting point for an attorney's fee award prior to any adjustments in step two or three of the required analysis." *Crump*, 245 F. Supp. 3d at 716.

| Name | Hours requested | Hours awarded | Rate | Total |
|------|-----------------|---------------|------|-------|
| Emily Booth | 135.10 | 113.59 | $250.00 | $28,397.50 |
| Bruno Reategui | 144.90 | 109.43 | $350.00 | $38,300.50 |
| Pejman Moshfegh | 49.20 | 35.90 | $400.00 | $14,360.00 |
| Total lodestar figure | | | | $81,058.00 |

**B.    No reduction of the lodestar figure is necessary to account for unsuccessful claims.**

"After the Lodestar figure is calculated, the Court must determine whether the fee award should be reduced to reflect the time counsel spent on unsuccessful claims that are unrelated to the successful claims." *Denton*, 252 F. Supp. 3d at 528 (citing *Robinson*, 560 F.3d at 244). "Where the plaintiff's claims are based on different facts and legal theories, and the plaintiff has prevailed on only some of those claims, . . . these unrelated claims [must] be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." *Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989). However, when claims arise out of "a common core of facts" or are "based on related legal theories" "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley*, 461 U.S. at 435.

Although the defendants do not specifically argue that Mr. Torres-Baez was unsuccessful in his claims against them, they do argue that Mr. Torres-Baez's attorneys "participated in an unsuccessful settlement conference[] and prepared for a trial that did not happen[] before Plaintiff accepted Defendants' Offer of Judgment" and for those reasons Mr. Torres-Baez's attorneys' fee award should be reduced. ECF No. 109, at 11. The defendants' argument fails in a few ways. First, the argument fails to recognize that the offer of judgment was not offered to Mr. Torres-Baez until approximately a month before trial was scheduled. *See* ECF Nos. 86, 94-1. Mr. Torres-

Baez's attorneys were therefore preparing for trial until the offer of judgment was accepted. Second, the argument fails to recognize that Mr. Torres-Baez successfully achieved a judgment against Deputies Ozzimo and Thomas on all claims—excessive force and breach of duty to protect. *See* ECF No. 17, at 11–14.  Pursuant to the offer of judgment, Deputies Ozzimo and Thomas allowed "judgment to be entered against them in this action in the sum of Ten Thousand Dollars ($10,000), and in full and final satisfaction of Plaintiff Miguel A. Torres-Baez's claims for damages resulting from the claims that are the subject of this action." ECF No. 94-1, at 2.  For these reasons, the Court makes no adjustment to the lodestar figure at this stage and will next consider Mr. Torres-Baez's degree of success.

**C.    A downward adjustment of the lodestar figure is appropriate because of Mr. Torres-Baez's degree of success.**

The last step in determining a reasonable fee award is adjusting the lodestar figure to take into account the "degree of success enjoyed by the plaintiff on his successful claims." *Denton*, 252 F. Supp. 3d at 529 (quoting *Grissom*, 549 F.3d at 321).  The degree of success is the "most critical factor" in determining whether a fee award is reasonable. *Hensley*, 461 U.S. at 436.  In determining the degree of success achieved by the plaintiff, the Court considers *Robinson* factor eight, the "amount in controversy and the results obtained." *McAfee*, 738 F.3d at 89.  The award, however, does not need to be proportional to the recovery to be reasonable. *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986) ("A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts.  This is totally inconsistent with Congress' purpose in enacting § 1988.").  A court must ask whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *McAfee*, 738 F.3d at 92 (quoting *Hensley*, 461 U.S. at 434).

The defendants argue that Mr. Torres-Baez's attorneys' fees should be reduced by 50% due to his limited success. ECF No. 109, at 10–12. Defendants state that, although it is unclear the total amount originally sought in Mr. Torres-Baez's complaint, it was at least $1,800,000.00.[10] *Id.* at 11. Therefore, the defendants claim that Mr. Torres-Baez's $10,000.00 recovery, which is 180 times less than what he sought, justifies a reduction in the attorneys' fees. *Id.*

In evaluating *Robinson* factor eight, the "amount in controversy and the results obtained," the Court considers that, although Mr. Torres-Baez achieved success on his claims against the defendants, Mr. Torres-Baez only recovered a small portion of his initial claim. However, the Court does not find this factor particularly weighty. When Mr. Torres-Baez filed his complaint and sought somewhere between $600,000.00 and $1,800,000.00 in damages,[11] he was proceeding *pro se*. *See* ECF No. 17, at 14. Therefore, even though monetary damages are relevant, because this was a civil rights case that began with a *pro se* plaintiff, the vindication of a plaintiff's rights cannot be valued *solely* in monetary terms. *See Villano v. City of Boyton Beach*, 254 F.3d 1302, 1305 (11th Cir. 2001); *Rivera*, 477 U.S. at 572. In other words, the Court declines to reduce Mr. Torres-Baez's attorneys' fees simply because the amount he originally sought was significantly more than the amount he received.

The Court also considers the public benefit of Mr. Torres-Baez receiving a judgment against the defendants. *See Dowd v. City of Los Angeles*, 28 F. Supp. 3d 1019, 1062–63 (C.D. Cal.

---

[10] The defendants clarify that this number is reached by multiplying Mr. Torres-Baez's demand of $300,000.00 in consequential damages and $300,000.00 in punitive damages against all defendants. ECF No. 109, at 11. The defendants remove the deceased defendant, Mr. Giovenco-Montano, from their calculation as well. *Id.*

[11] In Mr. Torres-Baez's complaint, he "pray[ed] for judgment in his favor, and damages in his favor against all defendants . . . in no event less than $300,000, together with punitive damages in the amount of $300,000, against all defendants along with all fees and costs incurred and such additional relief as the court may deem just and proper." ECF No. 17, at 14.

2014) ("[I]n determining a reasonable fee award, a court should consider whether and to what extent a plaintiff's lawsuit has benefited the public."); *Corral v. Montgomery Cnty.*, 91 F. Supp. 3d 702, 720 (D. Md. 2015) (noting the public benefit of the litigation is worthy of "some commendation"). Here, Mr. Torres-Baez accepted a $10,000.00 offer of judgment against Deputies Ozzimo and Thomas in their individual capacities. ECF No. 94-1, at 2. Unlike *Dowd*, this did not appear to effectuate meaningful policy change or reap much benefit for the public at large. *Dowd*, 28 F. Supp. 3d at 1063. Rather, Mr. Torres-Baez received a private relief from the defendants, which limits his success to himself.

It is noteworthy, however, that Mr. Torres-Baez received an enforceable judgment against Deputies Ozzimo and Thomas for violating his constitutional rights. Although the monetary amount that accompanied the judgment was modest, the judgment itself is substantial. In a section 1983 case, it is a meaningful success for Mr. Torres-Baez to receive a judgment against the defendants for all claims he brought against them.

However, "a court should reduce an award if the relief is limited in comparison to the scope of the litigation as a whole." *Wyatt*, 2018 WL 10613184, at *12. And the amount of damages a plaintiff recovers is "certainly relevant to the amount of attorney's fees to be awarded." *Gregory v. Belfor USA Grp., Inc.*, No. 2:12cv11, 2014 WL 468923, at *9 (E.D. Va. Feb. 4, 2014) (quoting *Rivera*, 477 U.S. at 565). The relief here was $10,000.00 and the requested award of fees was $138,572.70, which is more than 13 times the monetary recovery. Even with the adjustment in the lodestar figure, the award is still more than 8 times the monetary award. *McAfee*, 738 F.3d at 92, 94 (discussing the importance of awarding an attorneys' fee that properly reflects the success in the case so that attorneys do not receive a windfall); *Hairston v. Prince George's Cnty.*, No. CIV. PJM 09-3431, 2012 WL 5995451, at *41 (D. Md. Nov. 28, 2012) (finding that reducing the fee

27

award to $100,000 was appropriate because "[a]n award of over $450,000 for $12,500 of relief not only has the feel of unfairness; it would run afoul of both Supreme Court and Fourth Circuit law indicating that district judges should be guided, in part, by 'the amount in controversy and the results obtained' when awarding fees").

Although the relief Mr. Torres-Baez obtained was significant, his recovery was somewhat limited. The Court recognizes that Mr. Torres-Baez received a judgment against the remaining defendants. The Court is also mindful of the need to ensure that civil rights plaintiffs have access to highly competent counsel in the future. Therefore, the Court finds that a fee reduction of thirty percent (30%) is appropriate based on Mr. Torres-Baez's degree of success.

## IV.   CONCLUSION

Having performed the required "lodestar analysis," considered all of the relevant *Robinson* factors, and adjusted the lodestar figure to reflect the plaintiff's "degree of success achieved," the Court **RECOMMENDS** that plaintiff's motion for attorneys' fees be **GRANTED IN PART** and **DENIED IN PART**. After making a downward adjustment to the attorneys' hourly rates and total hours requested by plaintiff and adjusting for overall success, the Court hereby **RECOMMENDS** an award of attorneys' fees to plaintiff in the amount of $56,740.60

## V.   REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.     Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within 14 days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an

extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within 14 days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

      2.     A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984)

Robert J. Krask
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
October 4, 2022

29